UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN DARIO RODRIGUEZ CRUZ, | No.  1:26-cv-00348 DAD SCR |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| WARDEN OF THE GOLDEN STATE ANNEX, | |
| Respondent. | |

Petitioner is a federal immigration detainee proceeding through counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  District Judge Drozd referred the instant motion to enforce judgment to the undersigned pursuant to Local Rule 302(c)(17).  ECF No. 21.

**FACTUAL AND PROCEDURAL HISTORY**

**I.      Section 2241 Petition**

Petitioner is a citizen and native of Colombia who entered the United States with his wife and two older children without inspection on or around July 7, 2024.  ECF No. 9-1 at 2. Petitioner and his family were encountered by a Border Patrol agent, transported to a processing center, and processed as "Expedited Removal—Credible Fear Referral."  Petitioner was then released and enrolled in the Intensive Supervision Appearance Program ("ISAP").  Id. at 4.  On December 20, 2024, Petitioner filed applications for asylum and withholding of removal.  Id. at 5. Petitioner and his wife have since welcomed a third child into the world and reside in San Jose,

1

California, where Petitioner works as a painter.  ECF No. 20 at 1.

On July 26, 2025, officers with the San Jose Police Department arrested Petitioner for driving under the influence ("DUI").  ECF No. 20-1 at 21-22.  Petitioner was later charged with five misdemeanor counts: (1) driving under the influence of alcohol – causing injury to another, Cal. Veh. Code § 23153(a); (2) driving under the influence of alcohol with a blood alcohol level of 0.08% and causing injury, Cal. Veh. Code § 23153(b); (3) hit and run driving causing property damage, Cal. Veh. Code § 20002(a); (4) hit and run accident resulting in injury, Cal. Veh. Code § 20001(a); and (5) driving while unlicensed, Cal. Veh. Code § 12500(a).  Id. at 68-70.  Immigration and Customs Enforcement ("ICE") officials determined Petitioner's arrest violated conditions of his release.  After contacting Petitioner and scheduling him to report in person, ICE officials took him into custody on September 3, 2025.  Id. at 3-4.

On January 16, 2026, Petitioner, proceeding pro se, filed a § 2241 petition challenging his immigration detention under the Due Process Clause of the Fifth Amendment.  ECF No. 1.  On February 18, 2026, the undersigned issued findings and recommendations that Petitioner's re-detention without notice or opportunity to be heard violated due process and recommended his immediate release.  ECF No. 11.  On February 27, 2026, District Judge Drozd adopted the findings and recommendations in full and granted the § 2241 petition as follows:

> a. Respondent is ORDERED to immediately release petitioner from his custody on the same conditions he was subject to prior to his September 4, 2025 detention;
>
> b. Respondent is ENJOINED AND RESTRAINED from re-detaining petitioner unless he provides petitioner with written notice before a pre-deprivation bond hearing to be convened by a neutral decision maker, at which hearing respondent will bear the burden of demonstrating that petitioner is a flight risk or danger to the community;

ECF No. 15 at 3.  On the same day, the Clerk of the Court entered judgment in Petitioner's favor and closed the case.  ECF No. 16.

## II.    Pre-Deprivation Hearing and Re-Detention

Respondent moved for a pre-deprivation hearing on March 15, 2026.  ECF No. 20-1 at 8-9.  The hearing was held on April 17, 2026, before Immigration Judge ("IJ") Frank A. Seminerio.

2

Id. at 4.  Respondent offered no live witnesses but submitted several documents to support its assertion of Petitioner's flight and danger risk: (1) Petitioner's FBI Rap Sheet (id. at 13-22); (2) a Santa Clara County Superior Court Minute Order dated December 10, 2025, documenting Petitioner's non-appearance and scheduling next hearing for April 23, 2026 (id. at 31-32); (3) a police report for Petitioner's DUI arrest dated July 27, 2026 (id. at 33-66); and (4) a Santa Clara County Misdemeanor Complaint dated July 29, 2025 (id. at 67-70).  Petitioner, through counsel, submitted numerous documents in support of his request for bonding, including, *inter alia*, sworn declarations from Petitioner and his spouse regarding the adverse impact of his detention on their family and Petitioner's efforts at sobriety and rehabilitation (id. 75-90), Alcoholics Anonymous ("AA") meeting attendances logs (id. at 97), proof of residency documents (lease agreements, utility bills, etc., id. at 98-123), and letters of support from the family's pastor and landlord (id. at 94-95).

According to the hearing transcript, counsel for the Department of Homeland Security ("DHS") began the hearing by examining Petitioner regarding his DUI arrest and immigration and work histories (ECF No. 23 at 7-17), followed by a similar line of questioning by the IJ (id. at 17-21).  Petitioner's counsel then examined Petitioner on his family ties and rehabilitation efforts. Id. at 21-29.  Petitioner's wife testified to Petitioner's character and the psychological harm that his six-month detention caused to her and their three children.  Id. at 30-37.

After closing arguments, Petitioner's counsel, Nathan Zaslow, and the IJ had the following exchange regarding the nature of Petitioner's pending criminal charges:

Zaslow:     And Your Honor, I would just like to say that . . . the district attorney . . . viewed all these charges as misdemeanors.  There's no felony charges in that.

Seminerio:  Yes, there are.

Zaslow:     N- -- no, there's no felony charges, Your Honor.

Seminerio:  Is the hit-and-run -- is the causing bodily injury not a felony?

Zaslow:     [T]he Government's submission of documents has the complaint, and they're all misdemeanors, Your Honor.

Seminerio:  I'm looking at --

3

Zaslow:     I was just looking -- the Government's submission of the charging papers. They're . . . all counts are misdemeanors or infractions. So I'm looking at filing of evidence in support towards the end. I don't see them . . . paginated, but, sorry, under Exhibit C. Every count's a misdemeanor, including Count IV resulting in an injury. That's --

Seminerio:  I think they just -- I think they might have misidentified that. Vehicular Code 20001, sub A, hit-and-run resulting in d- -- you think a hit-and-run resulting in death would be a misdemeanor?

Zaslow:     It's not death. It's . . . injury.

Seminerio:  Yes, but . . . under the statute, it could be death or injury.

Zaslow:     It's . . . a wobbler, and it was charged as a misdemeanor, Your Honor.

Seminerio:  But do you think a statute with a hit-and-run resulting in death would be charged as a misdemeanor?

Zaslow:     It – it's --

Seminerio:  It's a felony. They . . . miswrote it in there.

Zaslow:     No. Your Honor, it's not death. It's – it's a – it's an injury or . . . more than an injury, which could be death, theoretically. That's a really bad injury, but you won't call it an injury. You call that death. That's not – that's – that's just something that could be charged, and . . . this is a wobbler. It could be a misdemeanor or a felony. It was charged.

Seminerio:  Okay.

Zaslow:     They just charged it as a misdemeanor.

Seminerio:  Okay, understood. Okay, understood.

ECF No. 23 at 40-42. Before issuing his ruling, the IJ stated on the record that the government bore the burden of proof. ECF No. 23 at 43:7-8. He then went through the nine factors of Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006), and determined that six of the factors, and especially the sixth concerning Petitioner's criminal record, weighed in favor of finding risk of danger and flight. Id. at 43-47, 53.

After argument, the IJ issued a written decision memorializing his finding that Petitioner was a danger to the community and a flight risk. After considering the "totality of the evidence," the IJ determined that two of the Guerra factors, fixed address (factor 1) and employment history (factor 4), balanced toward Petitioner, and one factor, history of immigration violations (factor 7)

4

was neutral.  ECF No. 20-1 at 6.  However, six of the factors balanced against Petitioner: length of residence in the United States (factor 2); family ties in the United States (factor 3); record of appearance in court (factor 5); criminal record (factor 6); attempts to flee prosecution (factor 8); and manner of entry in the U.S (factor 9).  Id.

The IJ expanded on his oral findings regarding Petitioner's criminal record, but misidentified one of Petitioner's charges as a felony:

> On July 26, 2025, Respondent was arrested and charged with two counts of misdemeanor DUI, misdemeanor Hit and Run Causing Property Damage, ***felony Hit and Run Resulting in Injury***.  The police report indicates that Respondent was subjected to two breathalyzer tests, which recorded a BAC of .212%, which is more than 2.5 times the legal limit to operate a motor vehicle in the state of California.
>
> Respondent admits that, after consuming five alcoholic beverages, Respondent was involved in a vehicular collision with two other vehicles.  Respondent admits that he had neither a driver's license nor car insurance at the time.  Respondent admits that, out of panic, he exited his vehicle and began walking away.  Respondent does not recall what happened next, but, per the police report, witnesses chased after and held him down until police could arrive on scene.  Respondent's criminal case remains pending.

ECF No. 20-1 at 5-6 (emphasis added).  The IJ went on to explain that Petitioner's criminal record was the factor that "[m]ost significantly" balanced against Petitioner, and added that although Petitioner has just one criminal arrest in the U.S., "he has been in the U.S. for 19 months, six of which he was incarcerated for."  Id. at 6.  The IJ further determined that Petitioner was a flight risk, "particularly given that he had missed one hearing with this IJ and admittedly attempted to walk away from the scene of the collision."  Id.  The IJ gave both parties 30 days to appeal to the BIA pursuant to 8 C.F.R. § 1003.38.  Id.

ICE re-detained Petitioner on April 23, 2026, six days after the decision and before the expiration of the thirty-day appeal period set by the IJ.  ECF No. 20-1 at 5.  The BIA has rejected Petitioner's appeal twice, first on May 4, 2026, and then again on May 7, 2026, because its electronic filing system does not provide an option for appealing the results of pre-deprivation bond hearings.  Id. at 127-28.  Respondent confirmed in its opposition that EOIR does not have a mechanism for administrative appeals of pre-deprivation bond hearings.  ECF No. 25 at 2, n.1.

### III.    Motion to Enforce Judgment

On May 11, 2026, Petitioner, through counsel, filed a motion to enforce the judgment and for order of release on grounds that the government re-detained him in violation of Judge Drozd's order.[1]  ECF No. 20.  Petitioner alleges that the court-ordered hearing was "forward-looking" ("its purpose was to determine whether Respondents, with new evidence, could establish that re-detention was justified"), but Respondent submitted no post-order evidence to the IJ.  ECF No. 20 at 8.  Petitioner further argues the IJ did not use the clear and convincing burden of proof— particularly in mischaracterizing Petitioner's misdemeanor arrest as a felony in his written decision—and did not act as a neutral adjudicator.  Id. at 9-12.  Petitioner also asserts the IJ failed to explain his decision and ignored probative evidence.  Id. at 12-13.  Finally, Petitioner maintains that his re-detention on April 23, 2026, within the 30-day appeal period, violated due process and the Court's order, and prevented him from resolving his misdemeanor charges at hearing in Santa Clara County Superior Court scheduled for the same day.  Id. 13-14.  By way of relief, Petitioner seeks his (1) immediate release, as "[o]rdering yet another bond hearing would only enable Respondent to evade habeas review by holding a series of insufficient or sham hearings"; and (2) an injunction preventing his re-detention "absent a demonstrable and meaningful change of circumstances post-dating [the Court's order dated February 27, 2026]."  Id. at 15-16.

Respondent filed an opposition to the motion asserting full compliance with the Court's injunction:

> Petitioner received written notice of the bond hearing to be held before an immigration judge. [ECF No. 24-1] at 3.  The IJ noted that this Court ordered Respondent to, "bear the burden of demonstrating that [Petitioner] is a flight risk or danger to the community." [ECF No.] 20-1 at 4. Then the IJ issued a written decision determining that Petitioner is a flight risk and a danger. Id. at 5.  Respondent only re-detained Petitioner after receiving the immigration court's order.

ECF No. 24 at 3.  As for Petitioner's challenges to the IJ's conduct, Respondent maintains that

---

[1]  On May 1, 2026, proceeding pro se, Petitioner filed a separate § 2241 petition in which he states that he was released pursuant to this court's previous order and was subsequently re-detained.  Rodriguez Cruz v. Warden, California City Detention Center, 1:26-cv-03358 DAD SCR (E.D. Cal.).  Judge Drozd issued an order relating and reassigning the case.  ECF No. 5.  Petitioner's counsel has since appeared in that action, ECF No. 6, and the undersigned granted the Parties' request to suspend briefing pending resolution of this motion, ECF No. 9.

the IJ is not a party to this action but nonetheless applied the proper legal standards and burden of proof consistent with the injunction and Ninth Circuit precedent.  Id.  Respondent further argues that Petitioner's re-detention within the timeframe to appeal was lawful, as the injunction did not create a "30-day waiting period" after the hearing.  Id. at 4.  Finally, Respondent argues that if the Court orders relief, the remedy should be another hearing because Petitioner's requested relief of release would exceed the scope of the Court's injunction.  Id.

On reply, Petitioner argues that Respondent relies solely on the form of compliance, i.e., notice and a hearing, and fails to refute that the IJ's actions demonstrate "something is amiss." ECF No. 25 at 2-3 (citing, *inter alia*, Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024)). Specifically, Respondent did not address the portions of the transcript that allegedly show the IJ purposely mischaracterized Petitioner's arrest as a felony and omitted Petitioner's post-release compliance (fixed address, continuous employment, ongoing AA attendance, etc.) and other probative evidence from the written decision.  Id. at 3-5.  Petitioner reiterates that the release is the proper remedy for the violations of the Court's order and that Respondent's authorities in support of another hearing are inapposite in that they concern prolonged detention.  Id. at 8.

**LEGAL STANDARDS**

A district court has continuing jurisdiction to enforce its judgments.  See Hook v. State of Ariz., Dep't of Corr., 972 F.2d 1012, 1014 (9th Cir. 1992); see also Judulang v. Chertoff, 562 F.Supp.2d 1119, 1126 (S.D.Cal.2008) ("[H]abeas courts are empowered to make an assessment concerning compliance with their mandates.").  Judges of this District have reviewed motions to enforce judgments in immigration habeas cases under the standard for enforcing injunctions.  See Idiev v. Warden of Golden State Annex Det. Facility, No. 1:25-cv-01030-SKO (HC), 2026 WL 760218, at *2 (E.D. Cal. Mar. 18, 2026).  The party seeking to enforce an injunction has the burden of showing by clear and convincing evidence that the enjoined party violated a specific provision of the court's order.  See Kia America, Inc. v. Rally Auto Group, Inc., Case No. 8:22-cv-00109-JVS-JDE, 2022 WL 17185011 at *2 (C.D. Cal. Oct. 20, 2022) (citing FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999)).  The language in an injunction should be clear such that ordinary persons will know "precisely" what action is proscribed in order to

provide sufficient notice to the party being enjoined. Clark v. Coye, 60 F.3d 600, 604 (9th Cir. 1995). "[A]ll ambiguities are resolved in favor of the person [or entity] subject to the injunction." United States v. Holtzman, 762 F.2d 720, 726 (9th Cir. 1985).

The standard of review must also account for the fact that what is being reviewed here is an IJ's determination of danger and flight risk. See Kumar v. Noem, No. 1:26-CV-01148-DJC-AC, 2026 WL 983129, at *2 (E.D. Cal. Apr. 13, 2026) ("[T]he Court's analysis [on a motion to enforce judgment] is grounded in the legal standard for reviewing IJ detention determinations."). In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. Martinez, 124 F.4th at 785. "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." Id. (citation and quotations omitted). In other words, "[i]n reviewing the IJ's determination, a district court['s] . . . review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" Quan v. Barr, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting Hilario Pankim v. Barr, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)).

The reviewing court must bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). Moreover, a habeas court reviews pure questions of law de novo. See Singh v. Holder, 638 F.3d 1196, 1202-03 (9th Cir. 2011).

**ANALYSIS**

**I.    Review of the IJ's Custody Determination**

Incorporating the two standard-of-review doctrines discussed above, the undersigned next determines whether petitioner has shown clearly and convincingly that the IJ engaged in pure legal error prohibited by the permanent injunction. The undersigned will also determine whether petitioner has shown clearly and convincingly that the IJ abused his discretion in determining that petitioner is a danger and flight risk by clear and convincing evidence.

"To determine whether a [noncitizen] is a danger to the community or a risk of flight, an

8

IJ weighs nine factors under BIA precedent." Martinez, 124 F.4th at 783 (citing Matter of Guerra, 24 I. & N. Dec. 37). "The nine factors an IJ 'may' consider 'include any or all of the following:' (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States." Id.

With this framework in mind, the Court now turns to the IJ's bond decision in Petitioner's case. As an initial matter, the undersigned finds no support for a "forward-looking" bond hearing in Judge Drozd's order granting the petition. Judge Drozd granted petitioner's release based on findings, rooted in Morrissey v. Brewer, 408 U.S. 471 (1972) and its progeny, that Respondent revoked Petitioner's supervision without notice and opportunity to be heard in violation of procedural due process. ECF Nos. 11, 15. Neither Judge Drozd nor the undersigned made findings regarding Petitioner's danger or flight risk that would suggest the IJ was limited to new (i.e., post-judgment) evidence. Id. Thus, the IJ did not err is considering evidence that predated judgment in this matter.

Further, while the BIA's repeated rejections of Petitioner's appeals raise broader concerns regarding the process available to noncitizens pursuing appeals of court-ordered bond hearings, Petitioner has not demonstrated that these barriers violate the Court's judgment.[2] Judge Drozd's order made no mention of appeal, nor prohibited Petitioner's re-detention within the 30-day appeal window. Even if Petitioner was able to submit an appeal to the BIA, there is no regulatory

---

[2]  Although Respondent does not argue Petitioner failed to exhaust administration remedies, the undersigned finds that BIA's Kafkaesque rejections of Petitioner's appeals due to the limitations of its electronic filing system would easily establish futility. See Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.").

9

procedure for staying the IJ's custody determination that would have put off his detention. See 8 C.F.R. § 1236.1(d)(4) ("The filing of an appeal from a determination of an immigration judge . . . shall not operate to delay compliance with the order"); but see 8 C.F.R. § 1003.19(i) (procedures for stay of custody order pending appeal by the government). To the extent there are due process defects with EOIR's appellate processing or ICE's re-detention of Petitioner despite his inability to file an appeal, those might be raised in a separate habeas action.

Turning to the written decision, the IJ identified the proper standard of review and legal standard (i.e., Guerra factors) and stated that he based his decision on the "totality of the evidence." ECF No. 20-1 at 5-6. However, upon review of the record and for the reasons set forth below, the undersigned concludes that the IJ abused his discretion in finding, by clear and convincing evidence, that Martinez was a danger to the community and a flight risk.

First, the Petitioner has sufficiently demonstrated that the IJ abused his discretion in finding that Petitioner was "arrested and charged" with *felony* hit and run resulting in injury. The government—which bore the burden of proof—put forth unequivocal evidence at hearing that county prosecutors charged Petitioner with two *misdemeanor* hit and run charges. "When there is an indication that something is amiss," like if an IJ "'misstat[es] the record,' or 'fail[s] to mention highly probative or potentially dispositive evidence,'" the court need not credit the IJ's statement that he "properly assessed the entire record." Martinez, 124 F.4th 775 (quoting Cole v. Holder, 659 F.3d 762, 771-72 (9th Cir. 2011)). The IJ's reference to a felony is a material error given that he identified Petitioner's criminal record as the "most significant[]" factor behind his dangerousness finding. "When an IJ's bond memorandum indicate[s] that he misunderstood some of the evidence presented . . . this mistake may have caused the IJ to overestimate the severity of the petitioner's past conduct, which demonstrates that the IJ may not have adequately considered all of the available evidence in assessing petitioner's present dangerousness." Ramos, 293 F. Supp. 3d at 1034–35 (quoting Obregon v. Sessions, No. 17-CV-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017)). Based on the IJ's insistence on a felony at the hearing, the undersigned is unconvinced that his reference to a felony charge in the written decision was a typographical error and not a reflection of his belief that prosecutors undercharged

Petitioner.[3]

Moreover, the IJ failed to meaningfully discuss the probative evidence that Petitioner submitted demonstrating his significant family and community ties and rehabilitation efforts. In fact, the written decision does not expressly reference *any* of the evidence that Petitioner submitted for review. "Although an immigration judge need not discuss each piece of evidence submitted, 'where there is any indication that the [immigration court] did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand.'" Singh v. Warden, Golden State Annex Detention Facility, No. 1:26-cv-01973-DAD-CSK, 2026 WL 1328588, at *6 (quoting Cole, 659 F.3d at 771–72); see also Franco-Rosendo v. Gonzales, 454 F.3d 965, 966 (9th Cir. 2006) (holding, in the context of motions to reopen, that "the BIA abuses its discretion when it fails to 'consider and address in its entirety the evidence submitted by a petitioner' and to 'issue a decision that fully explains [its reasoning.]'") (quoting Mohammed v. Gonzales, 400 F.3d 785, 792–93 (9th Cir. 2005).

Accordingly, the undersigned finds that the IJ abused his discretion in determining that Petitioner was a danger and flight risk by clear and convincing evidence.

**II.     Remedy**

Respondent maintains that if the Court orders relief, the proper remedy is not release but another bond hearing. Respondent relies on S.E. v. Noem, No. 1:26-CV-00356-DAD-SCR, 2026 WL 206085, at *3–4 (E.D. Cal. Jan. 27, 2026) ("S.E. v. Noem I"), where Judge Drozd granted a motion for preliminary injunction on due process grounds and ordered a bond hearing as a remedy for Petitioner's prolonged, mandatory detention under 8 U.S.C. § 1226(c). The petitioner then filed a motion to enforce the injunction on grounds that the IJ's subsequent flight risk determination was an abuse of discretion. Judge Drozd granted the motion to enforce but ordered

---

[3] Per the hearing transcript, the IJ appeared to claim a felony charge was warranted based on the statute's inclusion of the words "injury or death," not the facts of Petitioner's alleged crime. See ECF No. 23 at 41-42. But California Vehicle Code § 20002.1(a) is not a categorical felony, and to charge it as such requires heightened factual circumstances. "[A] violation of § 20001(a) without death or permanent, serious injury is still what is called 'a wobbler' under state law, meaning that it can be punished either as a felony or a misdemeanor[.]" Morris v. Clay, No. CIV S 08-1790 FCD DAD HC, 2010 WL 2011583, at *9 (E.D. Cal. May 19, 2010).

11

a second bond hearing over the undersigned's recommendation that the petitioner be released. S.E. v. Noem, No. 1:26-CV-00356-DAD-SCR, 2026 WL 836327, at *1-2 (E.D. Cal. Mar. 26, 2026) (S.E. v. Noem II"). Judge Drozd explained that releasing the petitioner would require a new procedural due process analysis "in light of the government's failure to provide petitioner a constitutionally adequate bond hearing, which would exceed the scope of the court's order granting a preliminary injunction." S.E. v. Noem II, 2026 WL 836327, at *2.

Similarly, in Singh, 2026 WL 1328588, Judge Drozd granted the petitioner's motion to enforce but ordered a second bond hearing instead of release. Judge Drozd granted the underlying motion for temporary restraining order via minute order on grounds the government revoked the petitioner's release on recognizance pursuant to 8 U.S.C. § 1226(a) in violation of due process. However, Judge Drozd explained in the minute order that the evidence warranted a post-deprivation hearing as opposed to the petitioner's immediate release. Singh, 2026 WL 1328588, at *1. Relying on S.E. v. Noem II, Judge Drozd explained his reasoning for again ordering a second bond hearing as a remedy for the IJ's abuse of discretion:

> "[I]t is not clear to the court that the court may order petitioner's release when ruling on petitioner's motion to enforce the court's preliminary injunction which ordered a bond hearing. When deciding a motion to enforce the court's prior order, the court's review concerns whether the Government complied with the Court's Order and provided Petitioner with a bond hearing where the government bore the burden of proof." *S.E. v. Noem [II]*, 2026 WL 836237, at *2 (internal quotation marks omitted). Accordingly, construing petitioner's motion as one seeking to enforce this court's prior order, the proper remedy is to order a new bond hearing.

Singh, 2026 WL 1328588, at *8.

The undersigned finds the analyses in S.E. II and Singh instructive here and ultimately lead to the conclusion that this case is factually distinguishable. Unlike the injunctions in those cases, the order that Petitioner seeks to enforce here required his immediate release and enjoined his re-detention absent a court-ordered bond hearing where the government must prove, by clear and convincing evidence, that Petitioner is a flight risk or a danger to the community. As Petitioner has not yet received a compliant hearing, ordering his release here is within the scope of Judge Drozd's order granting the § 2241 petition and would not require a reworked procedural

12

due process analysis.  Accordingly, the undersigned recommends that the motion to enforce judgment be granted and Petitioner be released in accordance with the instructions below.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Petitioner's motion to enforce judgment and motion for order of release (ECF No. 20) be GRANTED as follows:

a.  Respondent be ORDERED to immediately release Petitioner from his custody on the same conditions he was subject to prior to his September 4, 2025, detention;

b.  Respondent be ENJOINED AND RESTRAINED from re-detaining Petitioner unless he provides Petitioner with written notice before a pre-deprivation bond hearing to be convened by a neutral decision maker, at which hearing Respondent will bear the burden of demonstrating that petitioner is a flight risk or danger to the community.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 4, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE